UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

NANCY M. GOINGS,                          )
                                          ) No. CV-05-0341-MWL
            Plaintiff,                    )
                                          ) ORDER GRANTING DEFENDANT'S
v.                                        ) MOTION FOR SUMMARY JUDGMENT
                                          )
JO ANNE B. BARNHART,                      )
Commissioner of Social                    )
Security,                                 )
                                          )
            Defendant.                    )
_____  )

     BEFORE THE COURT are cross-motions for summary judgment,

noted for hearing without oral argument on August 14, 2006.  (Ct.

Rec. 13, 20).  Plaintiff Nancy M. Goings ("Plaintiff") did not

submit a reply brief.  Attorney Lana Cece Glenn represents

Plaintiff; Special Assistant United States Attorney Johanna

Vanderlee represents the Commissioner of Social Security

("Commissioner").  The parties have consented to proceed before a

magistrate judge.  (Ct. Rec. 8).  After reviewing the

administrative record and the briefs filed by the parties, the

Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 20)

and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13).

**JURISDICTION**

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") benefits on July 30, 1998, alleging disability since December 1, 1997, due to lower back pain, leg pain, knee pain, hysterectomy, atypical connective tissue disease carpal tunnel syndrom and TMJ. (Administrative Record ("AR") 115-118, 127). Her application was denied initially and on reconsideration. On December 19, 2000, and February 15, 2001, Plaintiff appeared before Administrative Law Judge ("ALJ") Richard Hines. (AR 54-102). On February 15, 2001, testimony was taken from Plaintiff, medical expert R. Thomas McKnight, Ph.D., and vocational expert J. D. Flynn, Ed.D. (AR 54-95). On May 4, 2001, the ALJ issued a decision finding Plaintiff not disabled. (AR 19-25). The Appeals Council denied Plaintiff's request for review on October 3, 2002 (AR 7-9), and Plaintiff filed a complaint in this Court on November 26, 2002 (Civil Action No. CS-02-0408-CI). On September 3, 2003, the United States District Court for the Eastern District of Washington remanded the case for additional proceedings.

The ALJ conducted a new hearing on July 15, 2004,[1] at which time testimony was taken from Plaintiff and medical expert Glen Almquist, M.D. (AR 559-583). On May 19, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 364-382). The Appeals Council denied a request for review on October 3, 2005. (AR 346-348). Therefore, the ALJ's decision became the

---

[1]Plaintiff filed a new SSI claim on July 23, 2002, and she filed a hearing request on February 26, 2003, after the new claim was denied at the initial and reconsideration levels. (AR 364-365). The ALJ consolidated the claims for one decision to be issued. (AR 365).

final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on October 27, 2005.  (Ct. Rec. 2).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 59 years old on the date of the ALJ's decision, has a Master's degree in social work and has past work experience as a special education teacher intern, hospital social worker, telephone counselor, weight loss counselor, and telemarketer.  (AR 129, 365).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and ///

vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
(9th Cir. 2001).

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.
20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is
engaged in substantial gainful activities.  If he is, benefits are
denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the
decision maker proceeds to step two, which determines whether
Plaintiff has a medically severe impairment or combination of
impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares Plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),
416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment
meets or equals one of the listed impairments, Plaintiff is
conclusively presumed to be disabled.  If the impairment is not
one conclusively presumed to be disabling, the evaluation proceeds
to the fourth step, which determines whether the impairment
prevents Plaintiff from performing work he has performed in the
past.  If Plaintiff is able to perform his previous work, he is
not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff
cannot perform this work, the fifth and final step in the process
determines whether Plaintiff is able to perform other work in the
national economy in view of his residual functional capacity and
///

his age, education and past work experience.  20 C.F.R. §§
404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

    The initial burden of proof rests upon Plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once Plaintiff establishes that a physical or mental
impairment prevents him from engaging in his previous occupation.
The burden then shifts to the Commissioner to show (1) that
Plaintiff can perform other substantial gainful activity and (2)
that a "significant number of jobs exist in the national economy"
which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498
(9th Cir. 1984).

## STANDARD OF REVIEW

    Congress has provided a limited scope of judicial review of a
Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999).  "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d

573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

///

///

///

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date.  (AR 366).[2]  At step two, the ALJ determined that Plaintiff has the severe impairments of cervical degenerative disease and low back pain, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 377).  The ALJ specifically found that Plaintiff failed to demonstrate that she has a mental impairment that has posed more than minimal limitations on her ability to perform work-related activities.  (AR 377).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to preform a wide range of light work.  (AR 378).  Specifically, the ALJ held that Plaintiff retained the following functional capacity:  a lifting capacity of up to 25 pounds occasionally and 10 pounds frequently, the ability to stand or walk about six hours in an eight-hour work day, sit (with normal breaks) for a total of about six hours in an eight-hour work day, push and pull with her upper extremities would be limited due to cervical spine abnormalities, she could frequently climb stairs and ramps, occasionally climb ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch, and crawl and needed to avoid concentrated exposure to heights.  (AR 378).

///

///

---

[2]The ALJ noted that Plaintiff had worked 25 hours per week from January to May 1998; however, the earnings from this employment did not amount to totals consistent with substantial gainful activity, and the work was performed prior to filing her application for SSI.  (AR 366).

At step four of the sequential evaluation process, and based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was able to perform her past relevant work as a special education teacher intern, an instructional aide, a hospital social worker, a telephone counselor and a weight loss counselor. (AR 380-381). Therefore, the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 381-382).

## **ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1.    The ALJ erred by failing to conclude at Step Three that Plaintiff's impairments, when combined, equaled a Listings impairment under the musculoskeletal criteria of 1.04;

2.    The ALJ erred by improperly rejecting the testimony of Plaintiff's treating and examining physicians;

3.    The ALJ erred by relying on the opinion of the medical expert over the weight of the medical evidence presented; and

4.    The ALJ erred by relying on a hypothetical presented to a vocational expert at an earlier hearing to support a finding that Plaintiff was not disabled in this matter.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

///

///

1              **DISCUSSION**

2  **A.  Medical Evidence**

3       Plaintiff contends that the ALJ erred by improperly rejecting

4  testimony from her treating and examining physicians of record.

5  (Ct. Rec. 16, pp. 39-44).  Plaintiff also argues that the ALJ

6  erred by relying on the testimony of the medical expert over the

7  weight of the medical evidence presented.  (Ct. Rec. 16, pp. 44-

8  46).  The Commissioner responds that the ALJ properly considered

9  and evaluated the medical evidence of record.  (Ct. Rec. 21, pp.

10  12-18).

11       The courts distinguish among the opinions of three types of

12  physicians:  treating physicians, physicians who examine but do

13  not treat the claimant (examining physicians) and those who

14  neither examine nor treat the claimant (nonexamining physicians).

15  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  A treating

16  physician's opinion is given special weight because of his

17  familiarity with the claimant and his physical condition.  *Fair v.*

18  *Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is

19  given to a treating physician than an examining physician.

20  *Lester*, 81 F.3d at 830.  However, the treating physician's opinion

21  is not "necessarily conclusive as to either a physical condition

22  or the ultimate issue of disability."  *Magallanes v. Bowen,* 881

23  F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

24       The Ninth Circuit has held that "[t]he opinion of a

25  nonexamining physician cannot by itself constitute substantial

26  evidence that justifies the rejection of the opinion of either an

27  examining physician or a treating physician."  *Lester*, 81 F.3d at

28  830.  Rather, an ALJ's decision to reject the opinion of a

treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The ALJ determined that Plaintiff retained the RFC to preform a wide range of light exertion level work activities. (AR 378). Specifically, the ALJ held that Plaintiff retained the following functional capacity: a lifting capacity of up to 25 pounds occasionally and 10 pounds frequently, the ability to stand or walk about six hours in an eight-hour work day, sit (with normal breaks) for a total of about six hours in an eight-hour work day, push and pull with her upper extremities would be limited due to cervical spine abnormalities, she could frequently climb stairs and ramps, occasionally climb ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch, and crawl and needed to avoid concentrated exposure to heights. (AR 378).

Plaintiff provides a list of individuals who have treated or examined Plaintiff, including Danielle Riggs, ARNP, Dr. Mackey-Hargadine, Dr. Quinn, Dr. Remple, Dr. Dentler, Dr. Marineau, Dr.

Arguinchona, and Dr. Wymore, and argues, in general terms, that
the ALJ erroneously rejected the opinions of these medical
professionals and improperly relied on the testimony of the
medical expert. (Ct. Rec. 16, pp. 39-46). Plaintiff's specific
argument, however, is that the ALJ improperly rejected the
opinions of Dr. Dentler. (Ct. Rec. 16, pp. 42-43).

Bruce Dentler, M.D., first examined Plaintiff on January 25,
2001. (AR 333). Plaintiff was seen by Dr. Dentler "for
initiating some records and proceedings for [a] disability court
hearing in February." (AR 333). It was noted that she was not
taking regular medications and did not request medications at the
time of the exam. (AR 333). Dr. Dentler noted that Plaintiff's
low back was significantly impaired and further noted restricted
motion with range of motion maneuvers. (AR 333). However, the x-
rays ordered by Dr. Dentler during that visit were negative except
for minor degenerative changes in the lumbosacral facets. (AR
334).

On February 1, 2001, Dr. Dentler noted that Plaintiff
returned to "help [him] complete the functional capacity part of
her Social Security Disability application." (AR 440). Dr.
Dentler had Plaintiff demonstrate the movements and "together"
they completed the forms. (AR 440). It was noted that Plaintiff
was not requesting medication. (AR 440). A Residual Functional
Capacity Questionnaire form and a form entitled Medical Assessment
of Ability to Do Work-Related Activities (Physical) were completed
on February 1, 2001. (AR 336-342). Dr. Dentler marked that
Plaintiff was restricted to occasionally lifting and carrying up
to 20 pounds and frequently lifting and carrying up to 10 pounds.

(AR 336, 339).  Dr. Dentler noted several other restrictions and indicated that Plaintiff experienced moderate to severe pain.  (AR 338).

On February 22, 2001, Dr. Dentler noted that Plaintiff was "not doing too badly right now" and attributed prayer, moderate exercise, stretching, and lumbar support as being very helpful. (AR 441).  On May 3, 2001, Plaintiff returned to Dr. Dentler because she needed a slip about her medical care so that she could pick up her food stamps.  (AR 443).  On August 8, 2001, Plaintiff returned to have an application filled out attesting to her disability in order for her to have a deduction on her housing allowance.  (AR 444).  On May 2, 2002, Dr. Dentler noted that Plaintiff was doing pretty well right now.  (AR 452).  He indicated that he reviewed conservative treatment with Plaintiff and noted that Plaintiff could stretch and do moderate activity, such as walking, bicycling and swimming.  (AR 452).

On August 8, 2002, Dr. Dentler saw Plaintiff for an update on her disability and completed the same disability forms he completed on February 1, 2001, with similar findings.  (AR 453-461).  Dr. Dentler noted that Plaintiff's physical capacity had been updated for her attorney since Plaintiff continued to apply for social security disability.  (AR 453).  On June 17, 2004, Dr. Dentler again updated the same forms.  (AR 522-529).  The results were similar but contained additional restrictions in repetitive hand motions for grasping, pushing and pulling and fine manipulation.  (AR 522-529).

///

///

The ALJ gave a very detailed review and analysis of the record.  (AR 366-380).  With regard to Dr. Dentler, the ALJ indicated that he considered the restrictions outlined by Dr. Dentler and rejected those opinions.  (AR 379-380).  The ALJ indicated that the majority of Dr. Dentler's office notes show that no physical examinations were performed and that Plaintiff's main objective was completion of forms related to her efforts to get state and federal disability, food stamps and reduced housing.  (AR 379).  The ALJ noted that Plaintiff provided the physician with a written history which he based his opinions on, and Dr. Dentler noted that he had Plaintiff help him complete the disability forms.  (AR 379).  The ALJ indicated that Dr. Dentler's opinions appeared to be based on Plaintiff's subjective complaints, as opposed to objective findings, and the ALJ concluded that Plaintiff was not entirely credible (a finding not contested by Plaintiff in this case).  (AR 379).  The ALJ further indicated that, given the fact that the record revealed that Plaintiff and Dr. Dentler prayed together, the level of involvement of Dr. Dentler appeared to go beyond an objective physician/patient relationship.  (AR 380).

On March 27, 2000, Plaintiff was examined by Dr. Monroe related to her complaints of lower back pain.  (AR 290-294).  Dr. Monroe indicated that Plaintiff was able to climb on and off the exam table without difficulty, took her footwear on and off with smooth movement and no hesitation, did not stand during the interview other than when asked, was able to be seated in a chair with no observed difficulty, did not assume abnormal postures or shift positions while seated with undue frequency, and rose from a

seated position without noted difficulty.  (AR 291-293).  Dr. Monroe noted that, upon examination of her back, she had no spasm palpate, nor was it tender.  (AR 293).  Plaintiff was observed to walk with no limp or list and walked on her toes without difficulty.  (AR 294).  Dr. Monroe diagnosed a history of carpal tunnel syndrome, with negative sign's on physical exam, possible knee degenerative joint disease and a history of back and neck injury with chronic pain.  (AR 294).

On October 31, 2002, a state agency reviewing physician completed a residual functional capacity assessment form.  (AR 431-438).  The reviewing physician opined that Plaintiff retained the capacity to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, sit or stand and/or walk for a total of about six hours in an eight hour workday, and push and/or pull without restriction.  (AR 432).  It was noted that Plaintiff should never climb ladders, ropes or scaffolds and should only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl.  (AR 433).  The reviewing physician indicated that Plaintiff was occasionally limited with handling and fingering with her right hand.  (AR 434).

At the administrative hearing held on July 15, 2004, Glen Almquist, M.D., a medical expert in orthopedic medicine, testified.  (AR 562-580).  Dr. Almquist testified that Dr. Dentler's records reveal that Dr. Dentler was helping Plaintiff work on her application for disability and that Dr. Dentler was overstating her condition.  He testified that an x-ray of her back was fairly negative, and examinations demonstrated normal range of motion of her neck, back and knees.  Dr. Almquist testified that

Plaintiff did not have an impairment that met or equaled Listing 1.04A under step three of the sequential evaluation process. (AR 574-575). Dr. Almquist further stated that Plaintiff would have the following work-related limitations: occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; sit, stand, or walk two hours at a time; sit for a total of about eight hours in an eight-hour workday, alternating sitting, standing and walking; frequently climb stairs; occasionally climb ladders, stoop, bend and kneel; no restrictions of hands related to gripping, pushing, pulling and fine manipulation; she could frequently perform below shoulder height reaching and occasional above shoulder reaching; and should not work at unprotected heights. (AR 575).

Charles E. Brondos, M.D., at the request of the ALJ, evaluated Plaintiff for cervical and low back pain on August 24, 2004. (AR 547-549). Dr. Brondos, a neurologist, indicated that there were no objective abnormalities upon examination. (AR 547). Examination revealed normal range of motion, strength, sensation and reflexes. (AR 547, 549). He indicated that while there were issues with chronic pain, there were no objective abnormalities or findings suggestive of spinal cord or nerve root involvement. (AR 549). He reported that there was no indication from the evaluation to warrant restrictions on day-to-day activities. (AR 549).

The undersigned finds that the rationale provided by the ALJ for rejecting the opinions of Dr. Dentler was clear and convincing and supported by substantial record evidence. The weight of the ///

record evidence, including the opinions of Dr. Monroe, Dr. Brondos, and the state agency reviewing physician, as well as the opinions of the medical expert, Dr. Almquist, supports the ALJ's finding that Plaintiff retains the RFC to perform a wide range of light level work activity.  The ALJ's review and assessment of the medical evidence of record is without error.  While Plaintiff suggests a more favorable interpretation of the evidence, the ALJ's interpretation is rational and properly supported.[3] Plaintiff's assertion of error with regard to the ALJ's evaluation of the medical evidence lacks merit.

**B.   Step Three**

Plaintiff asserts that the ALJ failed to take into account the combined effect of her impairments.  (Ct. Rec. 16, pp. 37-39). Plaintiff argues that if the ALJ had considered the combined effects, including her ongoing degenerative disc disease of the lower spine and cervical spine, her knee problems, her wrist and hand problems, not to mention her foot problems, probable connective tissue disorder and bilateral radiculopathy with a herniated lumbar disc, he would have found that she equaled a Listings level impairment under the Musculoskeletal criteria or Listings 1.04.  (Ct. Rec. 16, p. 38).  Therefore, Plaintiff argues that the ALJ erred at step three of the sequential evaluation process.

///

---

[3]The Court must ultimately uphold the Commissioner's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  It is not the role of the Court to second-guess the Commissioner.  If evidence supports more than one rational interpretation, the court must uphold the decision of the Commissioner.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

The Listings describe, for each of the major body systems, impairments that are severe enough to prevent an individual from doing any gainful activity, regardless of her age, education, or work experience.  20 C.F.R. § 416.925(a).  Each Listing specifies the objective medical and other findings needed to satisfy the criteria of that Listing.  A diagnosis alone is insufficient; a medically-determinable impairment must also satisfy all of the criteria of the Listing.  20 C.F.R. § 416.925(c), 416.925(d).

It is Plaintiff's responsibility to prove that she is disabled at step three of the sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  Plaintiff bears the burden of establishing that her impairments satisfy the requirements of a Listings impairment.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-1099 (9th Cir. 1999).  A generalized assertion of functional problems is not enough to establish disability at step three.  *Id*. at 1100.

Plaintiff generally asserts that she equals Listing 1.04. (Ct. Rec. 16, pp. 37-39); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Plaintiff does not discuss the criteria for Listings 1.04 and fails to cite specific evidence supporting her argument that she meets or equals a Listings impairment.  (Ct. Rec. 16, pp. 37-39).  "For a claimant to qualify for benefits by showing that [her] . . . combination of impairments is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  As noted above, Plaintiff bears the burden of establishing that her impairments satisfy the requirements of a Listings impairment.  *Tackett*, 180 ///

- 17 -

F.3d at 1098-1099.  Since Plaintiff provides no evidence or

discussion as to how she specifically meets or equals a particular

Listings impairment, other than a generalized assertion, she fails

in her burden to demonstrate she is entitled to disability

benefits at step three.

In any event, a review of the record, as correctly assessed

by the ALJ, does not demonstrate that Plaintiff's level of

functioning was consistent with meeting a Listings level

impairment.

Listing 1.04 is defined as follows:

1.04 *Disorders of the spine* (e.g., herniated nucleus
pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis,
degenerative disc disease, facet arthritis, vertebral fracture),
resulting in compromise of a nerve root (including the cauda
equina) or the spinal cord.  With:

A.  Evidence of nerve root compression characterized by
neuroanatomic distribution of pain, limitation of motion of the
spine, motor loss (atrophy with associated muscle weakness or
muscle weakness) accompanied by sensory or reflex loss and, if
there is involvement of the lower back, positive straight-leg
raising test (sitting and supine);

or

B.  Spinal arachnoiditis, confirmed by an operative note or
pathology report of tissue biopsy, or by appropriate medically
acceptable imaging, manifested by severe burning or painful
dysesthesia, resulting in the need for changes in position or
posture more than once every 2 hours;

or

C.  Lumbar spinal stenosis resulting in pseudoclaudication,
established by findings on appropriate medically acceptable
imaging, manifested by chronic nonradicular pain and weakness, and
resulting in inability to ambulate effectively, as defined in
1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Although the ALJ found that, consistent with the medical

evidence of record, Plaintiff has the severe impairments of

cervical degenerative disease and low back pain (AR 377, 381), no

medical professional of record has opined that Plaintiff's impairments are of such severity as to meet or equal Listing 1.04A. Furthermore, as noted above, medical expert Almquist testified that Plaintiff would be evaluated under Listing 1.04A and that, in his opinion, she did not meet or equal that Listing. (AR 574-575). Based on the foregoing, Plaintiff failed to establish that she met or equaled the listings requirements of 1.04, or any other Listings impairment, and the ALJ did not err at step three of the sequential evaluation process in this regard.

**C. Vocational Expert Testimony**

Plaintiff lastly contends that the ALJ erred by relying on the testimony of a vocational expert from a prior hearing as evidence to support his finding that Plaintiff was not disabled. (Ct. Rec. 16, p. 46). The Commissioner asserts that the ALJ properly relied on the testimony of the vocational expert regarding the demands of Plaintiff's past relevant work, and his step four finding that Plaintiff could perform her past relevant work. (Ct. Rec. 21, pp. 19-20).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. The burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that Plaintiff can perform despite her identified limitations only after Plaintiff has established a

///

prima facie case of disability by demonstrating she cannot return to her former employment.  *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986).

At step four of the sequential evaluation process, the ALJ found that Plaintiff was able to perform her past relevant work and was therefore not disabled within the meaning of the Social Security Act.  (AR 380-381).  Accordingly, Plaintiff failed in her burden to demonstrate, at step four, that she could not return to her previous jobs.

As determined above, the weight of the record evidence in this case supports the ALJ's RFC finding that Plaintiff was capable of performing a wide range of light exertion level work activities with certain postural, manipulative and environmental limitations.  (AR 378).

A vocational expert testified at an earlier administrative hearing, held on February 15, 2001, that if Plaintiff could lift only 10 pounds maximum, with no repetitive push/pull; no operation of foot controls; no stooping, crouching, kneeling, squatting, or climbing; no heights; had to avoid dust, fumes, gases; and no temperature extremes, Plaintiff would retain the capacity to perform her past relevant work as a medical social worker, a case worker, and a telemarketer.  (AR 93-94, 380).  The ALJ relied on this testimony in making his step four determination.  (AR 380-381).

Since the vocational expert's testimony was based on an RFC equivalent to the RFC finding made by the ALJ in this case, Plaintiff's argument with regard to the vocational expert's testimony is without merit.  Based upon the proper RFC finding by the ALJ and the vocational expert testimony regarding the same, it

is apparent that the ALJ appropriately determined that Plaintiff retained the capacity to perform her past relevant work and was thus not disabled as defined by the Act.  (AR 381).

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is supported by substantial evidence and free of legal error.  Based on the foregoing, the undersigned concludes that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **DENIED.**

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 20**) is **GRANTED.**

3.    The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

**DATED** this ____1st____ day of November, 2006.


                              ____s/Michael W. Leavitt____
                              MICHAEL W. LEAVITT
                              UNITED STATES MAGISTRATE JUDGE